Good morning, Your Honors. Jonathan Ipsen, Canterbury Law Group, on behalf of the Appellant and Debtor, J&M Food Services. Your Honors, I'd like to reserve five minutes for rebuttal. Please watch the clock. I will. Thank you, Your Honors. Your Honors, what's been outlined in our briefs and what really is before this Court today is for this Court to clarify what the Ninth Circuit's opinion is with regard to two differing lines of cases within the Ninth Circuit, that being on one side the case of N. Ray Chandel, Enterprises, which was Central District, California, 1986, and on the other side, that being the V.M.S. National Properties case, Central District, California, 1992, and N. Ray Soquist, which followed V.M.S., which was Central District. So really, Your Honors, what's before this Court at the heart, among the other issues outlined in the briefs, is whether or not waiver and estoppel can apply to Section 365d of the Bankruptcy Code. Did Your Honor have a question? I'm sorry. No. Okay. So the district court cited, it recognized our case in George, but cited Law v. Siegel for the principle that equitable issues couldn't override the plain language of the Code, and the Code says that when the 120 days have passed, then the unexpired lease shall be deemed rejected, and we've consistently said that happens automatically. So maybe you could address how equitable issues could vary from the plain language of the statute in light of Law v. Siegel. Yes, Your Honor. And by the equitable issues, you're referring to waiver and estoppel, or are you referring to the other? No. Waiver and estoppel are both equitable issues that sometimes we say can extend time or change the reading of the statutory language. Yes, Your Honor. Looking at those equitable issues, and let's look at them with the light of estoppel. Here, Your Honor, we had a continuum of issues, first with regard to the debtor, debtor's counsel, but also and more importantly with regard to the landlord, all taking place prior to the time for that, the drop-dead date for that assumption to have occurred. Let's first take a look at what the issues with regard to debtor's counsel are outlined in the moving papers. So if you're going to argue that the principles of estoppel or that the landlord under equitable rules of estoppel would be estopped, that doesn't really help me because it isn't clear to me that estoppel even applies in light of the language of the statute. So my first hurdle, before I even ask whether estoppel would apply in some other context, is whether estoppel applies to 365d-4, and if there's any authority post-law v. Siegel that would get us there. Well, Your Honor, if the Court would actually look at the Second Circuit case, I'm sorry, the Southern District of New York case that we cited, the Ames Department of Stores case. The — on the — that — I think there was a Georgia case that you cited to the Sportsman's Link, Your Honor. District court. And it said that — well, that's inconsistent with our own decisions and — Well, what Sportsman Link — Sportsman Link, Your Honor, looked at actions and conduct of the debtor by informally assuming the lease. That's what we were looking at the Sportsman's Link case for. With regard to the estoppel issue, if you take a look at the Southern District of New York's analysis in the Ames Department Store case, you have pretty much almost the same facts that were before the Court here. And it's not estoppel for conduct after the drop-dead date. It's for conduct that happened before. And what you had, Your Honor, is you had the landlord in the record demanding payment of a pre-petition obligation on the lease, a pre-petition claim. The only way that could have been paid, Your Honor, would either be through a plan or if the lease were to be assumed. What are you saying are the — you haven't really addressed my question, which is, does estoppel even apply? But even if we looked at estoppel, what are you saying are the elements — what are the elements of estoppel here? You're saying — you're not saying the landlord did an inequitable act. You're saying the landlord took some acts that would be consistent with your client assuming the lease. And then, Your Honor, took the exact — Right. Is that correct? That's all you're saying? That's piece one, Your Honor. But then what makes it — Okay. But the landlord took some acts that would be consistent with your client assuming the lease. And that would be the first part. Okay. And what's the second part? Then what makes it inequitable is to turn around and say, even though we asked you to pay us rent that we would only be entitled to either through a plan or if the lease were being assumed, even if we asked you for petitioned camp charges, which we would only be entitled to under the same focus, we're now going to say the lease is terminated. So they took — so the second piece is they took acts consistent with your client assuming the lease, but then stood on their rights under D-4, which says if you don't assume the lease within the 120 days, then it's deemed rejected. Correct, Your Honor. So why is that — why is that a stop? Well, normally — so explain to me why that would stop the landlord. I don't understand that. Because the landlord can't have it both ways. There's nothing inequitable, right? So if the — if your client had, in fact, assumed the lease, they were required under 365B to pay the — to make these payments, correct? And that's exactly it, Your Honor. But then they decided not to by force of law. So I'm not understanding why estoppel is at play. Because the landlord, as a creditor, took actions that put that creditor above other creditors. And the only way it would have been put above the other creditors in the bankruptcy case is either through having that lease assumed or through an order of the court. At that point, though, the trustee could have assumed — decided to assume the lease, correct? But that's what the debtor did, because the debtor in possession and the trustee are synonymous under the code. So the trustee could have filed a motion, because we've said there has to be a formal motion, or an oral motion at a hearing, and there was neither. And had the trustee done that, then all of those payments would have been required by the code. Correct, Your Honor, and then we would have paid them. But the debt — the landlord can't demand the payments on one hand. There's a dispute, of course, about whether those are prepetition payments. And I know a lot of the briefing is about that dispute. Yes, Your Honor. But if the Court would look at footnote number 5 of the actual trial court decision, where Judge Collins actually says that the camp charges — he found the camp charges to be a prepetition claim. But with respect to estoppel, it was certainly disputed as to whether they were, because the obligation came due after — after the petition. I mean, that was the position of opposing counsel, right? That's the position of opposing counsel, but under the — Okay. So we have to find some inequitable act for estoppel to determine that — that estoppel is appropriate. So they would have to knowingly try to trick you. Is that correct, Your Honor? Correct, Your Honor, and that's what we've outlined in the papers. Okay. Thank you. Following up on that, Your Honor, is that while the Court asked about the obligation, there's no — no provision under the Bankruptcy Code for payment of an obligation. There's payment of claims. Judge Collins in the — Well, I'm looking at D3, and it says the trustee shall timely perform all the obligations of the debtor under an unexpired lease. Correct. Perform the obligations. But nowhere under the Code does the — is there a phrase, pre-petition obligation, payment of pre-petition obligations. It's all set forth in the Waterfall, Your Honor, of claims. So the — So obligation there has to be synonymous with claim. Otherwise, there's no way it can be paid. So under the lease — so in other words, your position is that a — I thought the whole purpose of the amendment to the Bankruptcy Code was to ensure that the debtor in an unexpired lease would keep the lease current on a going-forward basis so they wouldn't get free rent. That was my understanding, that they would have to perform all the obligations of the debtor under the lease, which I assume would include paying rent and the like. Would include paying rent going forward, Your Honor, yes. Right, going forward. So you're — that's not a claim. That's just the obligation under the lease. Going forward. But now what about the pre-petition rent? Okay. So — so there is — that was disputed by the landlord. It wasn't disputed that it was owed. It was disputed whether or not — It was disputed as to whether it was paid, and they had some accountant testify. No, Your Honor. That's — they actually didn't have an accountant. They had an officer of the company testify, and — That it was not paid. He gave a legal opinion that it wasn't a pre-petition claim, which we objected to. The numbers — But that doesn't really matter. It's what they thought for your estoppel argument, correct? When you say it doesn't really matter, that was one of the basis of our objection, that he wasn't there as an expert. What he was there was as a fact witness. But I'm getting back to your estoppel argument. I'm just trying to understand the estoppel argument. Yes, Your Honor. And what it was they did. And what you said earlier was they effectively deceived your client into thinking that they were agreeing to an assumption of the lease. And I guess that's — and so I'm trying to understand that part of the argument. Sure, Your Honor. I still have a question about — You did agree to Judge Acuda's question a minute ago that something would have had to be done to trick your client. So can you give me your best shot at that? Sure, Your Honor. What was going to trick your client? In the record, the testimony, which was not disputed, of the debtor, where she testified that she went into the rental office, she was told by the person at the rental office, you need to pay these CAM charges and the pre-petition rent. You took over the lease. In her mind, took over the lease is what we're — is where the trick is. She took over the — you took over the lease, give us the pre-petition money. That only works if taking over the lease gets you the pre-petition money by an assumption. Also, what the Court can see in the record is — the Court will note early in the trial, Judge Collins asked the witness whether or not she needed an interpreter. We're dealing with someone whose English is not her first language. So relying on the representations made to her, when the inequitable powers of the landlord versus the tenant, and the landlord tells you, you took over the lease, you owe me the money, give me the pre-petition money, she gives him the pre-petition money, the landlord then can't turn around, and this is the inequitable conduct, and say, ha, I got the money, now you can't have the lease. Because that puts him above all the other creditors and puts him in a better position than they would have otherwise been had the lease not been assumed. You want to save your remaining time for rebuttal? Thank you, Your Honor. We will. Okay. Good morning. My name is Teresa Foster, and I represent the Appellee Camel Investments, the landlord in this matter. The appeal concerns Judge Collins' 16-page order after a full day of trial and multiple briefs. And today, it seems like we're really down to the issue about the waiver and estoppel. Judge Collins decided as a matter of law, waiver and estoppels do not apply to motions to assume the lease, and he also decided factually that there was no waiver and there was no estoppel. Debtors' Council really did not discuss waiver, but the big issue seems to be what happened in that April 28th conversation concerning CAM charges. Important that that is an April conversation, because April was before the deadline to reject. The deadline to reject actually occurred in June. So this is not a situation like some of the other cases where a landlord pressured a debtor into paying pre-petition obligations after the deadline to accept had passed. This was back in April. And if you look at the transcript, it's really only, in the excerpts of records, it's really only a couple of pages, 894 to 896. There wasn't any trick or, as you mentioned, you know, knowingly tricked. Well, why not? Why not? You've heard his best shot. I asked him to take his best shot at that point, and his point is that English is a second language that she, I think the implication is that she relied on this statement, that it was a, her attorney had died, and that she relied on this statement that it was agreed, that she was going to accept lease and stay there. I think that's his best argument. What is your response, please? Are you talking about that April conversation? Right. Well, what happened in April, if you look at that, she testifies that she did not understand the CAM charges. We're talking about CAM charge reconciliations that came out due in March. So they were for prior years, and reconciliation was not billed until March. She says, on April 28th, I went to the landlord to ask about it. The first lady could not explain it, so some old skinny guy came out and explained it, and she didn't even have his name, I don't even know who it was, but her prior partner had been in charge of these premises, and every month he'd been paying estimated CAM charges. Well, the way this lease works, which is very common under a shopping center, is at the end of the year, the landlord looks and see if they owe the debtor money or the tenant money or if the tenant owes them money. So in March, they came out with this CAM reconciliation and decided that she owed them additional money. She didn't come in to pay past due CAM, and she didn't come in to pay past due rent. If you look at that transcript, she says she's paying the estimated CAM, the reconciliation that they asked for, and the May rent. But what he's just represented, and I think it's right in the record, that her testimony was that the statement from this individual that she spoke to was that you took over the lease, you owe this. Is that right? That's the allegation? That is the allegation the debtor is making, and I don't care if you look at the actual original transcript or the corrected transcript. Judge Collins didn't even have the transcript in front of him, but he listened to the testimony, and he heard the entire testimony, and what happened was the original debtor had a partner. Ms. Leo had a prior member who did run it, and when she took it over, because she took it over, she was the one responsible for paying it. But I think the question is, what's the effect of the landlord, in effect, telling the tenant, you took over the lease, which she could hear as an acknowledgment that she had assumed the lease? I don't even know who she spoke to at this office. All I know is I think it was an elderly, skinny gentleman in his 40s. I don't know who it was that she was actually speaking to with regards to the CAM charges, but she did take over the lease. She took over the premises. She actually got a restraining order and kicked out her former partner. And what was factually accurate that she had taken over the lease, at least so far as it went? Absolutely. It was actually accurate, and Judge Collins interpreted it that way, and even the decision in the BAP said that that was not clearly erroneous because it could be interpreted that way. And if it could be interpreted either way, it would not be clearly erroneous. But Eric Tauten, who's not the gentleman she was talking about in her testimony, is the one that came up and said he thought that that was a postpetition obligation because he had billed it postpetition and thought the landlord was entitled to receive it. It's hard to say he wasn't acting in good faith when the courts can't even decide whether or not CAM reconciliations are postpetition or prepetition, and that's that In re Ames case. But the landlord testified that he told her she took over. And we didn't dispute what she said because we didn't have the elderly gentleman there in court to dispute it, but it was accurate. She had actually physically taken over those premises and had taken over the lease, had taken over the business, but it had nothing to do with whether or not she had assumed the lease. And, you know, that's the whole reason for the in re treat decision that we look at a fine line. You need to have a motion or, you know, even an oral motion in court so that the court doesn't have to consider the conduct and try to consider what people had to say. It's very difficult, especially in this situation, because if you look what most of  the people said, they talked about what the debtor did, what the debtor did, only two issues they talked about what the landlord did, and one was prepetition. That was regarding the lease to delete. It's not relevant because it was prepetition, and the only other thing was that conversation in April 28th, and it's only two pages of the excerpt. There wasn't anything trying to trick her. It was explaining why she received a CAM reconciliation. She didn't understand what it was. They explained it to her, and she paid it, and that happened in April for the April CAM reconciliation and for the May rent. There was no demand, there was no testimony about a demand for her to pay January rent or for her to pay past-due CAM charters. That just never occurred. Do you have a question? No. Ginsburg. So the bankruptcy court thought that under Law v. Siegel and our cases, waiver and estoppel simply didn't apply to this deemed rejected portion of the code. Are there any cases other than the Southern District, Georgia case that's cited, are there any circuits that have weighed in on this issue? Not that I'm aware of, Your Honor, no. Okay. And, you know, we also shepherdized all these cases, and we didn't come across anything that was relevant or helpful or harmful either way. The case that the defendants had to rely on, that VMS case, was a different situation. I disagree with the case, but it was completely different. And the reason why it was different, it was post-rejection. After the lease had been rejected, the landlord came in and demanded, like, $7,500 in pre-petition rent, and once they got the rent, they went ahead and said, oh, the lease is rejected, we want to go ahead and kick this tenant out. That's not what happened here. The issue, even if you consider the CAM charges to be pre-petition, which Judge Collins did, this occurred pre-rejection. This occurred back in April, and as you mentioned, under 365, the tenant is supposed to be paying the obligations as they become due under the lease. Judge Collins also looked at In re George, and In re George is a very analogous situation that this Court decided 30 years ago. And in that situation, the landlord was demanding that the debtor pay rent. It was actually occurred after the old 60-day rejection deadline, and in both situations, the Court said they weren't going to decide as a matter of law whether waiver or estoppel applied. But based on the facts, which are rather similar to this case, the Court determined that there was no basis for waiver and there was no basis for estoppel. And the Court even said that the landlord had a good-faith belief that the amount that they were receiving was a post-petition rent payment they were entitled to. All we have here is Mr. Tauten's testimony, and no, he's not an expert, but he is a landlord. He is familiar with the lease, and he is familiar with the fact that they invoiced this obligation in March of 2017, which was post-petition, and he believed the landlord was entitled to that as a post-petition obligation. We did hear some unclear testimony from the debtor that the following month that she had paid the January pre-petition rent. The issue is, though, there was only one rent check, and if you apply it to the January pre-petition, then she would have been delinquent in the May. And if you look at the excerpt of the record on page 411, the landlord went through a summary of the billings and the payments, and there was a payment for the May payment was made, and it was a smaller amount, but it was not applied to January, but it's not a situation where the debtor says she paid both January and May. Breyer. Counsel, this case is very simple if the landlord said, well, wait a second, you're not the tenant, we're not accepting rent from you going forward, you need to vacate. Why accept the rent payment? This was, the rent payments we're talking about being accepted were before the rejection deadline. Right, but you were aware at that point, though, that the identity of the tenant had changed, that there was this dispute between the tenants and they had parted ways. Actually, it was still the same entity, but there was two members, and at this point, there was one member. And are you asking why the landlord didn't just give her back the rent check? Right. She was still occupying the premises, and under the Bankruptcy Code, the landlord was entitled to receive rent. They were entitled to receive rent for the occupancy of the premises. At that point, the debtor had not made it up their mind whether or not they were going to vacate the premises. Your client had tried to kick out that tenant, right? What's that, Your Honor? Your client had actually tried to get the stay lifted and kick out the tenant, Ms. Lau, or J&M, I guess, earlier. They did not get to the point of trying to kick her out, but, yes, Your Honor, they did try to get the stay lifted. And the district, because they said that the lease had been terminated before the bankruptcy, and the Bankruptcy Court rejected that argument. Is that right? Yes. And the background procedure on it was an appointment of a receiver was a breach of the lease, and because of the breach of the lease by the appointment of the receiver, the landlord had declared a termination of the lease. By the time we got to Bankruptcy Court, the receivership had been terminated, so that default had been cured. Okay. Are there no further questions? Wow, you guys are really easy today. Well, we have some time for rebuttal. Thank you, Your Honors. Just to clear up one point of confusion, the restraining order that existed wasn't by Ms. Lau against Mr. Chung. It was a restraining order Mr. Chung had obtained against Ms. Lau to not be on the premises for the business. Also, there's nothing That's the J part of J&M, right? Correct, Your Honor. Also, Your Honors, there's nothing in the record at the trial court, in fact, quite the opposite. Ms. Lau testified that she worked at the restaurant the whole time with Mr. Chung. There is in the record why there was the split. It was nothing really to do with the case. They were together romantically. They weren't together romantically. It led to the order, led to why the Chung part left. But just to clear up, the landlord's testimony that, or at least the way it's been characterized, that Ms. Chung was never there is just not supported by the testimony at trial. Ms. Chung was always there, which is why the test of which is why we maintain that the statement by the landlord, you took over the lease, you have to pay the prior charges, meant you're assuming the lease, you've got to get current on pre-petition charges. Also, Your Honors, yes, Your Honor. But on that point, just so you could respond, if it would be helpful to me, opposing counsel's response is that when we're talking about this kind of de facto situation and there's room for not just when there's English as a second language, but there's room for slippage and misunderstandings and whatnot, that that's why the code requires this to be a much more formal invocation. What's your response to that? The, just the same way, Your Honor, the code would require that a landlord couldn't obtain pre-petition payments. Okay. So they demanded a pre-petition payment. And just to address the points by counsel about the June or May rent, as is pointed out in the record, and this was in what was requested by Judge Collins of subsequent briefing after the trial, the amount that was asked for and demanded by the landlord was the exact amount of the pre-petition rent. The rent had escalation clauses. After the bankruptcy case had come through time, the rent increased. So the amount demanded by the landlord, it couldn't have been a mistake that it was the current rent they were demanding, because they actually asked for the dollar value that only fits to the pre-petition rent and CAM charges. January rent. Correct. Not to the then current rent, Your Honors. One other point. It was never disputed that the skinny person actually worked there. His representations weren't disputed at trial. The Court asked about other circuits' positions on this. That's outlined at page 25 of our opening brief. The Eleventh Circuit has applied it not to 360, not to this provision of the code, but they have applied it to existing leases and rents. And the other courts are outlined there. And I see that. I've got 11 seconds. Does the Court have any questions? Thank you, Your Honor. Thank you for your briefing. All right. The case of J&M Food Services v. Camel Investment is submitted, and we are adjourned for this session and for the week. All right.
judges: Ikuta, Christen, Morris